THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| NATHAN MYERS,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>ST. GEORGE POLICE DEPARTMENT,<br>et al.,<br><br>　　　　　　　　Defendants. | **MEMORANDUM DECISION<br>AND ORDER GRANTING IN PART<br>AND DENYING IN PART<br>MOTION TO DISMISS**<br><br>Case No. 4:20-cv-00113-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This case arises from a traffic stop of Plaintiff's vehicle on September 18, 2019.[1] Plaintiff asserts numerous state law and federal causes of action against Defendants.[2] Defendants include the City of St. George and St. George Police Department ("Entity Defendants"), various city officials and police officers ("Individual Defendants"),[3] and a police drug-sniffing dog.[4] Defendants (with the exception of the officer who initiated the traffic stop, Ben Tufuga) seek dismissal of Plaintiff's Complaint for failure to state a claim on which relief may be granted.[5]

Because Plaintiff failed to comply with the Governmental Immunity Act of Utah's notice of claim requirement[6] prior to initiating this case, subject matter jurisdiction is lacking over

---

[1] Verified Complaint in Law and Equity ("Complaint") ¶¶ 5-7 at 2-3, docket no. 3-2, filed Oct. 16, 2020.

[2] *Id*. ¶¶ 28-83 at 6-15.

[3] Several Individual Defendants are identified in the Complaint as "John Doe" police officers. *Id*. ¶ 2.C at 2.

[4] *Id*. ¶ 2 at 1-2.

[5] Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss"), docket no. 28, filed Feb. 17, 2021. The Motion to Dismiss does not seek dismissal of Plaintiff's claims against Officer Tufuga. *Id*. at 2-3. Therefore, this Memorandum Decision and Order does not address the propriety of Plaintiff's claims against Officer Tufuga.

[6] Utah Code Ann. § 63G-7-401(2).

Plaintiff's state law claims (Counts One through Eight).[7] Plaintiff also fails to allege sufficient facts to state plausible "personal capacity" federal causes of action (Counts Nine, Eleven, and Thirteen)[8] against Defendants who were not present and not actually involved in the traffic stop and search of his vehicle. Plaintiff's "official capacity" Constitutional violation claims (Counts Ten and Twelve)[9] fail as a matter of law. Plaintiff's "official capacity" claim under 42 U.S.C. § 1983 (Count Fourteen)[10] is appropriately asserted against only the Entity Defendants and, regardless, fails to state a plausible claim on which relief may be granted. And Plaintiff cannot maintain his federal causes of action (Counts Nine through Fourteen)[11] against a police dog. Therefore, Defendants' Motion to Dismiss[12] is GRANTED in part.

However, Plaintiff has alleged sufficient facts to state plausible "personal capacity" federal causes of action (Counts Nine, Eleven, and Thirteen)[13] against the "John Doe" police officers who were present and actually involved in the traffic stop and search of his vehicle. Therefore, Defendants' Motion to Dismiss[14] is DENIED in part.

The only remaining causes of action in Plaintiff's Complaint are those against Officer Tufuga (Counts One through Fourteen),[15] and the "personal capacity" federal causes of action

---

[7] Complaint ¶¶ 28-59 at 6-11.

[8] *Id*. ¶¶ 60-64 at 11-12, 68-72 at 12-13, 76-80 at 13-14.

[9] *Id*. ¶¶ 65-67 at 12, 73-75 at 13.

[10] *Id*. ¶¶ 81-83 at 14-15.

[11] *Id*. ¶¶ 60-83 at 11-15.

[12] Docket no. 28, filed Feb. 17, 2021.

[13] Complaint ¶¶ 60-64 at 11-12, 68-72 at 12-13, 76-80 at 13-14.

[14] Docket no. 28, filed Feb. 17, 2021.

[15] Complaint ¶¶ 28-83 at 6-15. Plaintiff's state law claims (Counts One through Eight) and "official capacity" federal causes of action (Counts Ten, Twelve, and Fourteen) against Officer Tufuga will be the subject of a subsequent order which will require Plaintiff to show cause as to why the claims should not be dismissed for the same reasons that Defendants' Motion to Dismiss is granted in part.

(Counts Nine, Eleven, and Thirteen)[16] against the "John Doe" police officers who were present

and actually involved in the traffic stop and search of Plaintiff's vehicle.[17]

**Contents**

FACTUAL BACKGROUND ................................................................................................. 3
PROCEDURAL BACKGROUND ....................................................................................... 5
DISCUSSION ....................................................................................................................... 8
  Plaintiff's failure to respond justifies granting Defendants' Motion to Dismiss ............... 8
  Subject matter jurisdiction is lacking over Plaintiff's state law claims ............................. 9
  Plaintiff fails to state plausible claims for Constitutional violations against Defendants
      who were not present and not actually involved in the traffic stop and search of
      his vehicle ............................................................................................................... 11
  Plaintiff fails to state plausible claims under 42 U.S.C. § 1983 against Defendants who
      were not present and not actually involved in the traffic stop and search of his
      vehicle ..................................................................................................................... 17
    Plaintiff's "personal capacity" § 1983 claim fails as to Defendants who were not
        present and not actually involved in the traffic stop and search of his
        vehicle ................................................................................................................. 18
    Plaintiff's "official capacity" § 1983 claim is appropriately asserted against only
        the Entity Defendants and, regardless, fails to state a plausible claim
        against the Entity Defendants ............................................................................. 19
  Plaintiff cannot maintain federal causes of action against K-9 Karly .............................. 21
ORDER ............................................................................................................................... 22

## FACTUAL BACKGROUND

On September 18, 2019, Plaintiff was traveling on Interstate 15 from Nevada into Utah.[18]

He noticed a road sign near Exit 30 in Utah which stated "drug enforcement area ahead."[19]

Shortly thereafter, Plaintiff was pulled over by St. George City Police Officer Ben Tufuga.[20]

Officer Tufuga was part of a unit which is comprised of approximately 20 police officers

---

[16] *Id*. ¶¶ 60-64 at 11-12, 68-72 at 12-13, 76-80 at 13-14.

[17] In a subsequent order, Plaintiff will be granted leave to file an amended complaint that properly identifies the "John Doe" officers as defendants.

[18] *Id*. ¶ 4 at 2.

[19] *Id*. ¶ 10 at 3.

[20] *Id*. ¶ 18 at 5.

patrolling the "drug enforcement area."[21] Officer Tufuga's stated reason for initiating the stop was that he observed Plaintiff make an improper lane change.[22] Plaintiff disputes that he performed an improper lane change.[23]

Upon contacting Plaintiff, Officer Tufuga ordered Plaintiff to exit his vehicle.[24] Officer Tufuga then spoke with Plaintiff outside the vehicle for "a minute or two."[25] A K-9 unit then arrived and a second "John Doe" officer brought out a drug-sniffing dog and proceeded to walk around the outside of Plaintiff's vehicle with the dog.[26] The "John Doe" officer allowed the dog to jump through the open driver-side window into Plaintiff's vehicle.[27] One of the officers then informed Plaintiff that the dog had made a general indication for drugs, and that the officers had probable cause to search Plaintiff's vehicle.[28] Plaintiff disputes that the dog made an indication for drugs, and if an indication was made, Plaintiff disputes that it was a reliable indication.[29]

Three or four "John Doe" officers searched Plaintiff's vehicle for approximately fifteen minutes.[30] The officers did not find any contraband.[31] Plaintiff was then issued a warning ticket for improper lane change and released.[32]

---

[21] *Id*. ¶ 10 at 3.

[22] *Id.* ¶ 7 at 3.

[23] *Id.*

[24] *Id*. ¶ 12 at 3.

[25] *Id.* ¶ 14 at 4.

[26] *Id.*

[27] *Id.*

[28] *Id.* ¶¶ 15-16 at 4.

[29] *Id*. ¶¶ 14-15 at 4, 23-24 at 5-6.

[30] *Id*. ¶ 18 at 5.

[31] *Id.*

[32] *Id.*

## PROCEDURAL BACKGROUND

Plaintiff filed his Complaint in the State of Utah's Fifth Judicial District Court on September 17, 2020.[33] The case was removed to the United States District Court for the District of Utah on October 15, 2020.[34] Subsequently, on February 17, 2021, Defendants filed their Motion to Dismiss.[35]

On February 24, 2021, Plaintiff filed a motion seeking to extend the deadline to amend pleadings.[36] The basis for the motion was to allow additional time for Plaintiff to properly name the "John Doe" police officers as defendants and to review case law involving roadblocks.[37] The motion also acknowledged the filing of Defendants' Motion to Dismiss and sought time for its review before Plaintiff would seek leave to amend his Complaint.[38] Plaintiff's motion was granted and the deadline to amend pleadings was extended to March 19, 2021.[39]

On March 15, 2021, Plaintiff filed another motion seeking to extend the deadline to amend pleadings.[40] The motion did not mention the pending Motion to Dismiss for which

---

[33] Notice of Removal of Action Under 28 U.S.C. § 1441(a), (b), (c) – Federal Question and Diversity of Citizenship ¶ 1 at 2, docket no. 2, filed Oct. 15, 2020.

[34] *Id.*

[35] Docket no. 28, filed Feb. 17, 2021.

[36] Plaintiff's Motion for Leave to File First Amended Complaint ("Motion for Extension"), docket no. 29, filed Feb. 24, 2021. The parties had previously stipulated to the February 26, 2021 deadline to amend pleadings. Attorneys' Planning Meeting Report ¶ 3.a. at 4, docket no. 13, filed Nov. 30, 2020; Scheduling Order ¶ 3.a. at 3, docket no. 14, filed Dec. 1, 2020.

[37] Motion for Extension ¶¶ 2 at 1, 4 at 2.

[38] *Id.* ¶ 3 at 2.

[39] Order Granting Motion for Extension of Time to Amend Complaint, docket no. 30, filed Mar. 1, 2021.

[40] Motion to Extend Time to File Plaintiff's First Amended Complaint, docket no. 31, filed Mar. 15, 2021.

Plaintiff's response deadline was March 17, 2021.[41] The motion was granted and the deadline to amend pleadings was extended to March 26, 2021.[42]

On March 17, 2021, Plaintiff's deadline to respond to the Motion to Dismiss passed without Plaintiff filing a response or requesting an extension of the deadline. Defendants then filed a request to submit for decision regarding the Motion to Dismiss on March 19, 2021.[43]

On March 26, 2021, Plaintiff again filed a motion seeking to extend the deadline to amend pleadings.[44] The motion did not mention Defendants' Motion to Dismiss. The motion was not ruled on. Instead, on March 31, 2021, an order entered which acknowledged the filing of Plaintiff's motion but stated "Plaintiff is failing to engage in the just, speedy, and inexpensive determination of this action."[45] The order directed Defendants to prepare and file by April 14, 2021, a proposed memorandum decision and order granting the Motion to Dismiss.[46]

Plaintiff subsequently filed two additional motions seeking to extend the deadline to amend pleadings on April 2, 2021,[47] and on April 9, 2021.[48] The motions did not mention the Motion to Dismiss, nor did they acknowledge the order from March 31, 2021. The motions were not ruled on due to the impending filing of Defendants' proposed memorandum decision and order granting the Motion to Dismiss.

---

[41] DUCivR 7-1(b)(3)(A).

[42] Order Granting Motion for Extension of Time to File Motion to Amend Complaint ("Second Order Extending Time"), docket no. 32, filed Mar. 16, 2021.

[43] Request to Submit for Decision, docket no. 33, filed Mar. 19, 2021.

[44] Plaintiff's Second Motion to Extend Time to File First Amended Complaint, docket no. 34, filed Mar. 26, 2021.

[45] Docket Text Order, docket no. 35, filed Mar. 31, 2021.

[46] *Id*.

[47] Plaintiff's Third Motion to Extend Time to File First Amended Complaint, docket no. 37, filed Apr. 2, 2021.

[48] Plaintiff's Request to File Finished First Amended Complaint Next Week, docket no. 38, filed Apr. 9, 2021.

On April 13, 2021, Plaintiff filed a motion seeking leave to amend his Complaint.[49] The motion was filed 18 days after the extended deadline to amend pleadings,[50] and one day prior to Defendants' deadline to file a proposed memorandum decision and order granting the Motion to Dismiss.[51] The motion did not acknowledge that it was filed after the deadline to amend pleadings, nor did it mention Defendants' Motion to Dismiss. The motion also failed to comply with local rule DUCivR 15-1(a)(2).[52]

On April 14, 2021, Defendants filed a proposed memorandum decision and order granting the Motion to Dismiss.[53] One week later, on April 21, 2021, Plaintiff filed a motion seeking leave to file a motion strike the Motion to Dismiss, or alternatively to permit a late response.[54] Plaintiff's motion was denied because Plaintiff's stated basis for not timely responding was unreasonable and contrary to the clear record in the case.[55] Plaintiff also failed to provide a sufficient factual or legal justification to strike the Motion to Dismiss or explain how a late response was justified or would substantively affect the disposition of the Motion to Dismiss.[56]

---

[49] Plaintiff's Motion for Leave to File First Amended Complaint Instanter, docket no. 40, filed Apr. 13, 2021.

[50] Second Order Extending Time at 2.

[51] Docket Text Order.

[52] The propriety of Plaintiff's Motion for Leave to File First Amended Complaint Instanter will be addressed in a separate memorandum decision and order.

[53] Proposed Memorandum Decision and Order Granting Motion to Dismiss, docket no. 41, filed Apr. 14, 2021.

[54] Plaintiff's Motion to Allow Instanter Late Filed Motion to Strike Defendants' Motion to Dismiss to Stand ("Motion for Leave to File Motion to Strike"), docket no. 45, filed Apr. 21, 2021.

[55] Memorandum Decision and Order Denying Motion for Leave to File Motion to Strike, docket no. 54, filed July 26, 2021.

[56] *Id*.

## DISCUSSION

Dismissal is appropriate under FED. R. CIV. P. 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[57] Each cause of action must be supported by sufficient, well-pleaded facts to be plausible on its face.[58] In reviewing the complaint, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[59] However, "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation" of the law are disregarded.[60] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[61]

### Plaintiff's failure to respond justifies granting Defendants' Motion to Dismiss

As an initial matter, local rule DUCivR 7-1(d) provides that "[f]ailure to respond timely to a motion . . . may result in the court's granting the motion without further notice."[62]

The record reflects that despite Plaintiff's awareness of the case's docket[63] and the filing of Defendants' Motion to Dismiss,[64] he did not timely file a response to the Motion to Dismiss.[65]

---

[57] FED. R. CIV. P. 12(b)(6); *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[58] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[59] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[60] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

[61] *Sullivan v. Univ. of Kansas Hosp. Auth.*, 844 Fed. App'x 43, 47 (10th Cir. 2021).

[62] DUCivR 7-1(d).

[63] Plaintiff contacted the Clerk's Office to inform them that he had not received email notifications of court filings. Remark, docket no. 44, filed Apr. 21, 2021. But Plaintiff confirmed with the Clerk that his associate had been receiving the email notifications. *Id.*

[64] Motion for Extension ¶ 3 at 2.

[65] DUCivR 7-1(b)(3)(A).

He also did not seek extension of the deadline to respond until after the deadline had passed[66] and after Defendants were directed to (and did) file a proposed memorandum decision and order granting the Motion to Dismiss.[67] And Plaintiff provided no reasonable basis for his failure to timely respond, and no sufficient factual or legal justification explaining how a late response would affect the disposition of the Motion to Dismiss.[68]

On this record, Plaintiff's failure to respond to Defendants' Motion to Dismiss is a sufficient justification for granting the Motion to Dismiss. Nevertheless, it is appropriate to address the propriety of Plaintiff's claims given his pro se status;[69] the complexities of the case (which involves numerous claims against numerous defendants); and that the case will persist against Officer Tufuga regardless of the disposition of the Motion to Dismiss.

### Subject matter jurisdiction is lacking over Plaintiff's state law claims

Plaintiff asserts eight state law claims against Defendants: Counts One and Two for violation of the Utah Roadblock Statute;[70] Counts Three and Four for violation of the Utah Body Camera Statue;[71] Counts Five and Six for violation of the Utah Constitution (Search and Seizures, Due Process);[72] and Counts Seven and Eight for violation of the Utah Constitution (Equal Protection, Uniformity of Laws).[73] Subject matter jurisdiction is lacking over these claims.

---

[66] Motion for Leave to File Motion to Strike.

[67] Docket Text Order; Proposed Memorandum Decision and Order Granting Motion to Dismiss.

[68] Memorandum Decision and Order Denying Motion for Leave to File Motion to Strike.

[69] While Plaintiff is appearing pro se in this case, he asserts that he has been a licensed attorney for approximately 35 years. Motion for Leave to File Motion to Strike ¶ 11 at 3.

[70] Complaint ¶¶ 28-35 at 6-8.

[71] Id. ¶¶ 36-43 at 8-9.

[72] Id. ¶¶ 44-51 at 9-10.

[73] Id. ¶¶ 52-59 at 10-11.

Under the Governmental Immunity Act of Utah ("UGIA"),

> Any person having a claim against a governmental entity, or against the governmental entity's employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority shall file a written notice of claim with the entity before maintaining an action, regardless of whether or not the function giving rise to the claim is characterized as governmental.[74]

"Compliance with the UGIA['s notice of claim requirement] is a prerequisite to vesting a district court with subject matter jurisdiction over claims against governmental entities [and employees of governmental entities]."[75]

Defendants argue that dismissal of Plaintiff's state law claims is appropriate because Plaintiff failed to serve a notice of claim prior to initiating this case.[76] Plaintiff did not plead that he complied with the UGIA's notice of claim requirement in his Complaint and did not respond to Defendants' argument. However, Plaintiff has filed a notice indicating that he served a notice of claim under the UGIA on the City of St. George and Washington County on May 3, 2021.[77] The service of this notice of claim occurred approximately seven and a half months after Plaintiff initiated this case.

Because the record reflects that Plaintiff failed to serve any Defendant with a written notice of claim under the UGIA before initiating this case, subject matter jurisdiction is lacking over Plaintiff's state law claims. Therefore, Plaintiff's state law claims (Counts One through Eight)[78] are dismissed without prejudice as to the moving Defendants.

---

[74] Utah Code Ann. § 63G-7-401(2).

[75] *Amundsen v. Univ. of Utah*, 448 P.3d 1224, 1229 (Utah 2019) (internal quotations and punctuation omitted).

[76] Motion to Dismiss at 6.

[77] Plaintiff's Notice to the Court of Plaintiff's Notice of Claim Filing, docket no. 50, filed May 3, 2021. Plaintiff's proposed amended complaint also includes an allegation affirmatively stating that Plaintiff did not serve a notice of claim prior to initiating this case. [Proposed] Verified Complaint in Law and Equity ¶ 98 at 18, filed Apr. 13, 2021.

[78] Complaint ¶¶ 28-59 at 6-11.

However, the UGIA's protections, including the notice of claim requirement, do not apply to Plaintiff's causes of action seeking vindication of federal rights (Counts Nine through Fourteen).[79] Therefore, the sufficiency of the Complaint's allegations to state plausible federal causes of action against Defendants must be addressed.

### Plaintiff fails to state plausible claims for Constitutional violations against Defendants who were not present and not actually involved in the traffic stop and search of his vehicle

Plaintiff asserts four claims for violation of the United States Constitution against Defendants: Counts Nine and Ten for violation of the Fourth Amendment's right against unreasonable searches;[80] and Counts Eleven and Twelve for violation of the Fifth and Fourteenth Amendments' rights to equal protection and due process.[81] Plaintiff's allegations regarding these claims are insufficient to state plausible claims for relief against Defendants who were not present and not actually involved in the traffic stop and search of Plaintiff's vehicle.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,[82] the Supreme Court held that "violation of [the Fourth Amendment] by a federal agent acting under color of . . . authority gives rise to a cause of action for damages consequent upon [the agent's] unconstitutional conduct."[83] "In the decade following *Bivens*, [the Supreme Court] recognized an implied damages remedy [against federal officers] under the Due Process Clause of the Fifth

---

[79] *Felder v. Casey*, 487 U.S. 131, 147, 151 (1988); *Rosa v. Cantrell*, 705 F.2d 1208, 1221 (10th Cir. 1982); *Jenkins v. Utah Cty. Jail*, No. 2:11-cv-00761-RJS, 2015 WL 164194, *19 (D. Utah Jan. 13, 2015); *Four Star Ranch, Inc. v. Cooper*, No. 2:08-cv-00394-TS, 2010 WL 3489567, *8 (D. Utah Sept. 2, 2010); *Hatch v. Boulder Town Council*, No. 2:01-cv-00071-PGC, 2007 WL 2985001, *13 (D. Utah 2007).

[80] Complaint ¶¶ 60-67 at 11-12.

[81] *Id*. ¶¶ 68-75 at 12-13.

[82] 403 U.S. 388 (1971).

[83] *Id*. at 389.

Amendment, and the Cruel and Unusual Punishments Claus of the Eighth Amendment."[84]
However, the Supreme Court has since "consistently refused to extend *Bivens* liability to any
new context or new category of defendants."[85] And in *Correctional Servs. Corp. v. Malesko*, the
Supreme Court made clear that "the purpose of *Bivens* [liability] is to deter individual federal
officers from committing constitutional violations."[86] *Bivens* liability does not extend to the
officer's employer or to governmental agencies and entities.[87]

The Complaint broadly alleges that Defendants "were acting under authority and/or color
of state law"[88] and engaged in "an intentional 'catch and release' roving roadblock program"[89]
for the purpose of "combating general crime (drug enforcement)."[90] The Complaint further
alleges that Defendants erected a sign on Interstate 15 stating "drug enforcement area ahead;"[91]
used a scanner "to track, follow, stalk, or otherwise investigate [Plaintiff]'s vehicle prior to it[]
being stopped;"[92] "pretextually" stopped Plaintiff's vehicle based on an asserted traffic
violation;[93] and per policy, had prearranged for a drug-sniffing dog to arrive at the scene.[94]
However, the Complaint is conclusory regarding Defendants conduct in relation to these

---

[84] *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 67 (2001) (internal citations omitted) (citing *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980)).

[85] *Id.* at 68.

[86] *Id.* at 70.

[87] *Id.* at 69-72.

[88] Complaint ¶ 2 at 1-2.

[89] *Id.* ¶¶ 11 at 3, 20 at 5.

[90] *Id.* ¶¶ 7, 11 at 3.

[91] *Id.* ¶¶ 10 at 3, 21 at 5.

[92] *Id.* ¶ 6 at 3.

[93] *Id.* ¶ 7 at 3.

[94] *Id.* ¶ 13 at 3.

allegations; it contains no factual allegations regarding how each Defendant was involved in the alleged "program."

The Complaint contains no allegations attributing any act or omission of Defendants to the traffic stop from which Plaintiff's claims arise (with exception to allegations regarding Officer Tufuga and certain "John Doe" police officers). The fact that the Entity Defendants are the employers of the officers that stopped and searched Plaintiff's vehicle, and that the Individual Defendants are officials and employees of the Entity Defendants, is not sufficient to create a reasonable inference that these Defendants had any involvement in the Constitutional violations Plaintiff alleges.

The broader systemic Constitutional violations Plaintiff alleges are also deficient on a more fundamental level. Plaintiff characterizes the alleged "program" as a "'catch and release' roving roadblock."[95] But the Complaint does not allege facts to support this characterization. At most, the Complaint includes factual allegations that a program or policy existed for officers to use a scanner to check license plates for possible infractions and to have a K-9 unit readily available to perform a sniff of vehicles that are stopped for such infractions or observed traffic violations within the "drug enforcement area."

These allegations are not sufficient to suggest that the program or policy is violative of a Constitutional right: A traffic stop may be initiated when an officer observes a traffic violation regardless of whether the officer had other subjective motives for stopping the vehicle.[96] And a K-9 sniff of a stopped vehicle is constitutionally permissible, even without a reasonable articulable suspicion that the vehicle contains contraband, so long as the sniff does not prolong

---

[95] *Id*. ¶¶ 11 at 3, 20 at 5.

[96] *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (citing *Whren v. United States*, 517 U.S. 806, 810-19 (1996)).

the stop beyond the time reasonably required to complete the stop's mission.[97] "Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop."[98] Typically, such inquiries involve asking questions about the driver's travel plans and "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."[99]

Plaintiff speculates that he was targeted for selective enforcement because he was an out-of-state traveler.[100] Plaintiff also speculates that the "drug enforcement area ahead" road sign entraps travelers to engage in criminal conduct by encouraging them to leave the road in an effort to avoid the "roving road stop."[101] Plaintiff further speculates that Defendants' conduct subjected travelers to "racial discrimination."[102] And Plaintiff speculates that any traffic stop under the alleged program would subject the driver to increased scrutiny and detainment.[103] However, the Complaint contains no factual allegations to support this speculation.

Plaintiff disputes that he made an improper lane change and that the K-9 made an indication for drugs when sniffing his vehicle.[104] If Officer Tufuga did not observe (or reasonably believe that he had observed) the traffic violation or if the K-9 did not indicate for drugs, then the stop and subsequent search of Plaintiff's vehicle may have violated Plaintiff's

---

[97] *Rodriguez v. United States*, 575 U.S. 348, 357 (2015).

[98] *Id*. at 355 (internal quotations omitted).

[99] *Id*.

[100] Complaint ¶¶ 7 at 3, 25 at 6.

[101] *Id*. ¶¶ 21-22 at 5, 30 at 7.

[102] *Id*. ¶ 27 at 6.

[103] *Id*. ¶ 20 at 5.

[104] *Id*. ¶¶ 7 at 3, 14-15 at 4.

Constitutional rights. For this reason, the Complaint's factual allegations are sufficient to state plausible "personal capacity" claims for violations of Plaintiff's Constitutional rights against Officer Tufuga and those "John Doe" officers who were present and actually involved in the traffic stop and search of Plaintiff's vehicle.

But Plaintiff does not allege any facts to support a reasonable inference that the alleged program or policy (or any of the other Defendants) had anything to do with Officer Tufuga's basis for initiating the traffic stop or whether the K-9 indicated on Plaintiff's vehicle. And Plaintiff does not allege sufficient facts to allow reasonable inference that the duration of the traffic stop was extended by the K-9 sniff. Plaintiff alleges that the K-9 unit arrived and began the vehicle sniff within one to two minutes of the stop's initiation.[105] No other facts are alleged about the time that elapsed prior to the K-9's indication or how that time related to or impacted Officer Tufuga's handling of the stop's mission regarding the improper lane change violation. Therefore, Plaintiff fails to allege sufficient facts to state plausible claims for Constitutional violations against Defendants who were not present or actually involved in the stop and search of his vehicle.

Additionally, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law."[106] Official-capacity suits, in contrast, are the appropriate mechanism for seeking liability of a governmental entity.[107] Thus, to the extent that Plaintiff's "personal capacity" Constitutional violation claims are asserted against the Entity Defendants, the claim fails to state a plausible claim for relief.

---

[105] *Id.* ¶ 14 at 4.

[106] *Graham*, 473 U.S. at 165.

[107] *Id.* at 165-66.

15

Plaintiff's "official capacity" Constitutional violation claims (Counts Ten and Twelve)[108] also independently fail to state a claim on which relief may be granted. Claims against individuals in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent."[109] "When a governmental official is sued in [both] official and individual capacities for acts performed in each capacity, those acts are treated as the transactions of two different legal personages."[110] "[A] person sued in [an] official capacity has no stake, as an individual, in the outcome of the litigation."[111] Rather, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[112]

Because "official capacity" claims are maintained as a matter of law against the official's employer, and because *Bivens* liability does not extend to the employer, agencies, or the government,[113] Plaintiff's "official capacity" claims for Constitutional violations fail to state a claim as a matter of law.

Therefore, Plaintiff fails to state plausible claims for violation of the United States Constitution against Defendants who were not present and not actually involved in the traffic stop and search of Plaintiff's vehicle. Plaintiff's "personal capacity" Constitutional violation claims (Counts Nine and Eleven)[114] are dismissed without prejudice as to the Individual Defendants who were not present and not actually involved in the traffic stop and search of

---

[108] Complaint ¶¶ 65-67 at 12, 73-75 at 13.

[109] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n.55 (1978)).

[110] *Johnson v. Bd. of Cty. Comm'rs for Cty. of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996) (internal citation and quotation omitted).

[111] *Id*.

[112] *Graham*, 473 U.S. at 166.

[113] *Malesko*, 534 U.S. at 69-72.

[114] Complaint ¶¶ 60-64 at 11-12, 68-72 at 12-13.

Plaintiff's vehicle. The claims are dismissed with prejudice as to the Entity Defendants. However, Defendants' Motion to Dismiss[115] is DENIED as to Plaintiff's "personal capacity" Constitutional violation claims (Counts Nine and Eleven)[116] against the "John Doe" police officers who were present and actually involved in the traffic stop and search of Plaintiff's vehicle. Plaintiff's "official capacity" Constitutional violation claims (Counts Ten and Twelve)[117] are dismissed with prejudice.

**Plaintiff fails to state plausible claims under 42 U.S.C. § 1983
against Defendants who were not present and not actually involved
in the traffic stop and search of his vehicle**

The last two causes of action in Plaintiff's Complaint are "personal capacity" and "official capacity" claims under 42 U.S.C. § 1983 (Counts Thirteen and Fourteen).[118] "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities."[119] "Therefore, it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the [governmental entity]."[120] Plaintiff's factual allegations are insufficient to state plausible claims for relief under § 1983 against Defendants who were not present and actually involved in the traffic stop and search of Plaintiff's vehicle.

---

[115] Docket no. 28, filed Feb. 17, 2021.

[116] Complaint ¶¶ 60-64 at 11-12, 68-72 at 12-13.

[117] *Id*. ¶¶ 65-67 at 12, 73-75 at 13.

[118] *Id*. ¶¶ 76-83 at 13-15.

[119] *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008).

[120] *Id*. at 1250 (emphasis in original).

**Plaintiff's "personal capacity" § 1983 claim fails as to Defendants who were not present and not actually involved in the traffic stop and search of his vehicle**

"[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."[121] Supervisors may also be held personally liable under § 1983 if "(1) the defendant promulgated, created, implemented or possessed personal responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional violation."[122] But ultimately, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."[123]

For those "John Doe" police officers who were present and actually involved in the traffic stop and search of Plaintiff's vehicle, the Complaint alleges sufficient facts to state a plausible "personal capacity" § 1983 claim. However, as discussed,[124] for Defendants who were not present and not actually involved in the traffic stop and search of Plaintiff's vehicle, the Complaint fails to allege sufficient facts that Defendants deprived Plaintiff of a federal right. The Complaint contains no factual allegations suggesting that these Defendants had any personal involvement in the Constitutional violations Plaintiff alleges. Nor are the Complaint's factual allegations sufficient to support a reasonable inference that these Defendants were personally involved in the alleged Constitutional violations. The Complaint also fails to include factual allegations demonstrating a policy that was promulgated, created, or implemented by any Defendant in a supervisory role which caused the alleged Constitutional harm.

---

[121] *Graham*, 473 U.S. at 166 (emphasis in original).

[122] *Wilson v. Montana*, 715 F.3d 847, 856 (internal quotations omitted).

[123] *Id*. at 854 (internal quotations omitted).

[124] *Supra* Discussion at 11-17.

Additionally, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law."[125] Official-capacity suits, in contrast, are the appropriate mechanism for seeking liability of a governmental entity.[126] Thus, to the extent that Plaintiff's "personal capacity" § 1983 claim is asserted against the Entity Defendants, the claim fails to state a plausible claim for relief.

Therefore, Plaintiff fails to allege a plausible "personal capacity" § 1983 claim against Defendants who were not present and not actually involved in the traffic stop and search of Plaintiff's vehicle. Plaintiff's "personal capacity" § 1983 claim (Count Thirteen)[127] is dismissed without prejudice as to Defendants who were not present and not actually involved in the traffic stop and search of Plaintiff's vehicle. However, Defendants' Motion to Dismiss[128] is DENIED as to Plaintiff's "personal capacity" § 1983 claim against the "John Doe" police officers who were present and actually involved in the traffic stop and search of Plaintiff's vehicle.

**Plaintiff's "official capacity" § 1983 claim is appropriately asserted against only the Entity Defendants and, regardless, fails to state a plausible claim against the Entity Defendants**

As discussed,[129] claims against individual defendants in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent."[130] "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[131] Because Plaintiff asserts his "official capacity" § 1983 claim against the Entity Defendants and the Individual Defendants (who are officials and employees of the Entity

---

[125] *Graham*, 473 U.S. at 165.

[126] *Id*. at 165-66.

[127] Complaint ¶¶ 76-80 at 13-14.

[128] Docket no. 28, filed Feb. 17, 2021.

[129] *Supra* Discussion at 15-16.

[130] *Graham*, 473 U.S. at 165 (citing *Monell*, 436 U.S. at 690, n.55).

[131] *Id*. at 166.

Defendants),[132] the claim against the Individual Defendants is duplicative. The Entity
Defendants are the claim's only true parties in interest. Therefore, the claim[133] is DISMISSED
without prejudice as against the Individual Defendants.

Regarding municipality liability under § 1983, "a local government may not be sued
under § 1983 for an injury inflicted solely by its employees or agents."[134] And "[a] municipality
cannot be held liable under § 1983 on a *respondeat superior* theory."[135] Rather, to state a
plausible claim against a governmental entity under § 1983, a plaintiff must allege "a policy
statement, ordinance, regulation, or decision officially adopted and promulgated by [the entity's]
officers" which causes a violation of a constitutional right.[136]

The types of governmental policy or custom that may lead to municipality liability under
§ 1983 include:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a
> widespread practice that, although not authorized by written law or express
> municipal policy, is so permanent and well settled as to constitute a custom or
> usage with the force of law; (3) the decisions of employees with final
> policymaking authority; (4) the ratification by such final policymakers of the
> decisions—and the basis for them—of subordinates to whom authority was
> delegated subject to these policymakers' review and approval; or (5) the failure to
> adequately train or supervise employees, so long as that failure results from
> deliberate indifference to the injuries that may be caused.[137]

---

[132] Complaint ¶¶ 81-83 at 14-15.

[133] *Id*.

[134] *Monell*, 436 U.S. at 694.

[135] *Id.* at 691.

[136] *Id.* at 690.

[137] *Waller v. City and Cty. Of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (internal quotations omitted).

The plaintiff must also allege facts showing a "direct causal link between the policy or custom and the injury alleged."[138] And "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[139]

Plaintiff does not attempt to allege the facts necessary to state a plausible "official capacity" § 1983 claim against the Entity Defendants. The Complaint does not contain factual allegations of a policy or custom sufficient to permit municipality liability under § 1983. The Complaint does not contain sufficient factual allegations to suggest that the Entity Defendants' alleged "program" caused a deprivation of Plaintiff's Constitutional rights.[140] And the Complaint does not contain factual allegations that the Entity Defendants failed to adequately train or supervise their officials and employees.

Therefore, Plaintiff fails to state a plausible "official capacity" § 1983 claim. Plaintiff's "official capacity" § 1983 claim (Count Fourteen)[141] is dismissed without prejudice.

### Plaintiff cannot maintain federal causes of action against K-9 Karly

Finally, Plaintiff's Complaint names a police drug-sniffing dog, K-9 Karly, as a Defendant.[142] K-9 Karly is not a "person" for purposes of liability under § 1983,[143] and lacks the capacity to be sued. The appropriate parties in interest for the acts of K-9 Karly are the dog's owner and handler. Because the law does not recognize claims against K-9 Karly, Plaintiff's

---

[138] *Id.* at 1284 (internal quotations omitted).

[139] *Id*. (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)).

[140] *Supra* Discussion at 11-17.

[141] Complaint ¶¶ 81-83 at 14-15.

[142] *Id*. ¶ 2.C at 3.

[143] *Dye v. Wargo*, 253 F.3d 296, 299-300 (7th Cir. 2001).

federal causes of action (Counts Nine through Fourteen)[144] are DISMISSED with prejudice as to K-9 Karly.

**ORDER**

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss[145] is GRANTED in part as follows:

1.     Plaintiff's state law claims (Counts One through Eight)[146] are DISMISSED without prejudice as to the moving Defendants, which includes all Defendants other than Officer Ben Tufuga;

2.     Plaintiff's "personal capacity" federal causes of action (Counts Nine, Eleven, and Thirteen)[147] are DISMISSED without prejudice as to the Individual Defendants who were not present and actually involved in the traffic stop and search of Plaintiff's vehicle;

3.     Plaintiff's "personal capacity" federal causes of action (Counts Nine, Eleven, and Thirteen)[148] are DISMISSED with prejudice as to the Entity Defendants;

4.     Plaintiff's "official capacity" Constitutional violation claims (Counts Ten and Twelve)[149] are DISMISSED with prejudice as to the moving Defendants, which includes all Defendants other than Officer Ben Tufuga;

---

[144] Complaint ¶¶ 60-83 at 11-15.

[145] Docket no. 28, filed Feb. 17, 2021.

[146] Complaint ¶¶ 28-59 at 6-11.

[147] *Id.* ¶¶ 60-64 at 11-12, 68-72 at 12-13, 76-80 at 13-14.

[148] *Id.* ¶¶ 60-64 at 11-12, 68-72 at 12-13, 76-80 at 13-14.

[149] *Id.* ¶¶ 65-67 at 12, 73-75 at 13.

5.      Plaintiff's "official capacity" § 1983 claim (Count Fourteen)[150] is DISMISSED without prejudice as to the moving Defendants, which includes all Defendants other than Officer Ben Tufuga; and

6.      Plaintiff's federal causes of action (Counts Nine through Fourteen)[151] are DISMISSED with prejudice as to K-9 Karly.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss[152] is DENIED in part as to Plaintiff's "personal capacity" federal causes of action (Counts Nine, Eleven, and Thirteen)[153] against the "John Doe" police officers who were present and actually involved in the traffic stop and search of Plaintiff's vehicle.

THEREFORE, the only remaining claims in Plaintiff's Complaint are those against Officer Ben Tufuga (Counts One through Fourteen),[154] and the "personal capacity" federal causes of action (Counts Nine, Eleven, and Thirteen)[155] against the "John Doe" police officers who were present and actually involved in the traffic stop and search of Plaintiff's vehicle.[156]

Signed September 13, 2021.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[150] *Id*. ¶¶ 81-83 at 14-15.

[151] *Id*. ¶¶ 60-83 at 11-15.

[152] Docket no. 28, filed Feb. 17, 2021.

[153] Complaint ¶¶ 60-64 at 11-12, 68-72 at 12-13, 76-80 at 13-14.

[154] *Id*. ¶¶ 28-83 at 6-15. Plaintiff's state law claims (Counts One through Eight) and "official capacity" federal causes of action (Counts Ten, Twelve, and Fourteen) against Officer Tufuga will be the subject of a subsequent order which will require Plaintiff to show cause as to why the claims should not be dismissed for the same reasons that Defendants' Motion to Dismiss is granted in part.

[155] *Id*. ¶¶ 60-64 at 11-12, 68-72 at 12-13, 76-80 at 13-14.

[156] In a subsequent order, Plaintiff will be granted leave to file an amended complaint that properly identifies these "John Doe" police officers as defendants.