THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| NATHAN MYERS,<br><br>     Plaintiff,<br><br>v.<br><br>BENJAMIN TUFUGA; TRAVIS WILLINGER; JUSTIN GRAY; and SEAN SPARKS,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:20-cv-00113-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiff's Amended Complaint asserts three causes of action arising from the traffic stop and search of his vehicle: (1) "Violation of Federal Constitution – Unreasonable Searches;" (2) "Violation of Federal Constitution – Equal Protection and Due Process;" and (3) "Violation of [42 U.S.C. §] 1983 and Related Statutes."[1] Defendants seek summary judgment, arguing that Plaintiff's constitutional claims are duplicative of his § 1983 claim, and that they are entitled to qualified immunity ("Motion").[2]

Because Plaintiff failed to respond to Defendants' Motion, the material facts set forth in the Motion[3] are considered undisputed. The Undisputed Material Facts establish that Defendants are entitled to qualified immunity and judgment on Plaintiff's claims as a matter of law. Therefore, Defendants' Motion[4] is GRANTED.

---

[1] Amended Complaint ¶¶ 28-42 at 7-9, docket no. 61, filed Sept. 29, 2021.

[2] Defendants' Motion for Summary Judgment ("Motion"), docket no. 69, filed Dec. 3, 2021.

[3] *Id.* ¶¶ 1-35 at 2-9.

[4] Docket no. 69, filed Dec. 3, 2021.

## Contents

UNDISPUTED MATERIAL FACTS ................................................................................ 2
DISCUSSION ............................................................................................................... 9
   Plaintiff's constitutional claims are duplicative of his § 1983 claim............................... 10
   Defendants are entitled to qualified immunity on Plaintiff's claims ............................... 10
      Defendants did not violate Plaintiff's constitutional right against unreasonable
         searches and seizures ................................................................................ 12
      Defendants did not violate Plaintiff's constitutional right to equal protection..... 16
      Defendants did not violate Plaintiff's constitutional right to due process........... 18
      Defendants did not violate other rights and statutes referenced in the Amended
         Complaint................................................................................................. 19
      Defendants are entitled to qualified immunity on Plaintiff's claims .................. 21
ORDER........................................................................................................................ 21

## UNDISPUTED MATERIAL FACTS

Because Plaintiff failed to respond to Defendant's Motion, the following 35 material facts set forth in the Motion are undisputed for purposes of summary judgment:[5]

1.     On September 17, 2020, Plaintiff initiated this action by filing a Complaint in the Fifth District Court, Washington County, State of Utah (case no. 200500466), which was subsequently removed to this court.[6]

2.     On September 29, 2021, Plaintiff filed an Amended Complaint.[7]

3.     The Amended Complaint alleges violation of Plaintiff's constitutional rights arising from a traffic stop and search of Plaintiff's vehicle by Defendants on September 18, 2019.[8]

4.     On September 18, 2019, Defendants, in their capacities as law enforcement employees for the St. George Police Department (Officers Tufuga, Willinger, and Sparks) and

---

[5] FED. R. CIV. P. 56(e)(2).

[6] Motion at Statement of Undisputed Material Facts ¶ 1 at 2 (citing Notice of Removal of Action Under 28 U.S.C. § 1441(a), (b), (c) – Federal Question and Diversity of Citizenship, docket no. 2, filed Oct. 15, 2020).

[7] *Id*. at Statement of Undisputed Material Facts ¶ 2 at 2 (citing Amended Complaint).

[8] *Id*. at Statement of Undisputed Material Facts ¶ 3 at 2 (citing Amended Complaint).

the Hurricane City Police Department (Officer Gray), were participating in a drug interdiction operation on Interstate 15 ("I-15") as part of the Washington County Drug Task Force ("Task Force").[9]

5.      The Task Force operation involved having K-9 units available in the area to intercept potential narcotics by responding to vehicles stopped for traffic violations.[10]

6.      On September 18, 2019, Plaintiff was driving northbound on I-15, near Exit 30 in Washington County, Utah.[11]

7.      Officer Tufuga was also driving northbound on I-15 and observed Plaintiff's vehicle fail to signal when switching from the left lane to the right lane. He also observed Plaintiff's vehicle drift out of its lane when passing a semi-truck.[12]

8.      Based on these observations, Officer Tufuga believed that Plaintiff committed two violations of the Utah Traffic Code for improper lane travel.[13]

9.      Officer Tufuga turned on his patrol lights and siren and proceeded to stop Plaintiff's vehicle, at approximately the Exit 30 marker on I-15. Officer Tufuga activated his

---

[9] *Id.* at Statement of Undisputed Material Facts ¶ 4 at 3 (citing Declaration of Ben Tufuga in Support of Motion for Summary Judgment ("Tufuga Declaration") ¶¶ 2-3 at 1-2, docket no. 70-1, filed Dec. 3, 2021; Declaration of Justin Gray in Support of Defendants' Motion for Summary Judgment ("Gray Declaration") ¶¶ 2-4 at 1-2, docket no. 70-3, filed Dec. 3, 2021; Declaration of Travis Willinger in Support of Defendants' Motion for Summary Judgment ("Willinger Declaration") ¶¶ 2-4 at 1-2, docket no. 70-5, filed Dec. 3, 2021; Declaration of Sean Sparks in Support of Defendants' Motion for Summary Judgment ("Sparks Declaration") ¶¶ 2-4 at 1-2, docket no. 70-9, filed Dec. 3, 2021).

[10] *Id.* at Statement of Undisputed Material Facts ¶ 5 at 3 (citing Tufuga Declaration ¶ 3 at 1-2; Gray Declaration ¶ 3 at 1; Willinger Declaration ¶ 3 at 1; Sparks Declaration ¶ 3 at 1).

[11] *Id.* at Statement of Undisputed Material Facts ¶ 6 at 3 (citing Amended Complaint ¶7 at 2).

[12] *Id.* at Statement of Undisputed Material Facts ¶ 7 at 3 (citing Tufuga Declaration ¶ 4 at 2).

[13] *Id.* at Statement of Undisputed Material Facts ¶ 8 at 3 (citing Tufuga Declaration ¶ 4 at 2).

bodycam prior to exiting his vehicle and approaching Plaintiff's vehicle. Officer Tufuga was driving an unmarked vehicle that was not equipped with a dashboard camera.[14]

10.     Officer Tufuga exited his vehicle, approached Plaintiff, and immediately notified Plaintiff of the two improper lane travel violations as the basis for the stop.[15]

11.     Officer Tufuga then engaged Plaintiff in conversation concerning Plaintiff's travel plans, identification, driver's license, insurance, and registration.[16]

12.     While Plaintiff search for his registration, Officer Tufuga initiated radio contact with Officer Willinger, who was the handler for the K-9 drug dog "Karly," and who located in the vicinity of Plaintiff's stop.[17]

13.     Plaintiff continued to search for his registration and after he indicated that he was unable to locate it, Officer Tufuga returned to his vehicle.[18]

14.     When Officer Tufuga returned to his vehicle, he initiated tasks to confirm the registration of Plaintiff's vehicle, ran a warrants check for any outstanding warrants, and began writing out a warning citation for the traffic violations he had observed. While Officer Tufuga was engaged in these tasks, Officer Willinger and his assigned partner that day, Office Gray,

---

[14] *Id*. at Statement of Undisputed Material Facts ¶ 9 at 3-4 (citing Tufuga Declaration ¶ 5 at 2; Tufuga Bodycam Video, docket no. 70-2, conventionally filed Dec. 3, 2021).

[15] *Id*. at Statement of Undisputed Material Facts ¶ 10 at 4 (citing Tufuga Declaration ¶ 7 at 2-3; Tufuga Bodycam Video at 0:40).

[16] *Id*. at Statement of Undisputed Material Facts ¶ 11 at 4 (citing Tufuga Declaration ¶ 7 at 2-3; Tufuga Bodycam Video at 0:59).

[17] *Id*. at Statement of Undisputed Material Facts ¶ 12 at 4 (citing Tufuga Declaration ¶ 7 at 2-3, Tufuga Bodycam Video at 2:12).

[18] *Id*. at Statement of Undisputed Material Facts ¶ 13 at 4 (citing Tufuga Declaration ¶ 7 at 2-3; Tufuga Bodycam Video at 3:20-4:00).

arrived with K-9 Karley. When Officer Gray approached, Officer Tufuga told him that he was "scratching out a cite" and that the Plaintiff's name was "Nathan."[19]

15.    Officer Gray approached Plaintiff's vehicle and requested that Plaintiff exit the vehicle, which Plaintiff did. Officer Gray activated his bodycam prior to approaching Plaintiff.[20]

16.    As Plaintiff emerged from his vehicle, Officer Willinger approached with K-9 Karley.[21]

17.    Officer Willinger is certified as a dog handler and has met all qualifications and requirements established by Peace Officer Standards and Training ("POST") for the State of Utah. K-9 Karly is a certified Narcotics Detection Canine and has gone through a rigorous training and testing program, and has also met all qualifications and requirements for K-9 dogs established by POST for the State of Utah.[22]

18.    K-9 Karly was certified to properly detect multiple odors of narcotics, including: methamphetamine; marijuana; cocaine; heroin; ecstasy; and psilocybin mushrooms. Officer Willinger was certified and tested to show his competence in recognizing K-9 Karly's behavior regarding positive alters and indications to the presence of these odors. Officer Willinger and K-9 Karly were consistent in their training.[23]

---

[19] *Id.* at Statement of Undisputed Material Facts ¶ 14 at 4 (citing Tufuga Declaration ¶ 8 at 3; Tufuga Bodycam Video at 4:17, 6:45; Gray Declaration ¶¶ 4-5 at 2; Willinger Declaration ¶ 7 at 2).

[20] *Id.* at Statement of Undisputed Material Facts ¶ 15 at 4-5 (citing Tufuga Declaration ¶ 9 at 3; Gray Declaration ¶ 7 at 2; Gray Bodycam Video at 0:00-0:35, docket no. 70-4, conventionally filed Dec. 3, 2021).

[21] *Id.* at Statement of Undisputed Material Facts ¶ 16 at 5 (citing Tufuga Declaration ¶ 9 at 3; Tufuga Bodycam Video at 7:10-7:46).

[22] *Id.* at Statement of Undisputed Material Facts ¶ 17 at 5 (citing Willinger Declaration ¶ 5 at 2; POST Certificates, docket no. 70-6, filed Dec. 3, 2021).

[23] *Id.* at Statement of Undisputed Material Facts ¶ 18 at 5 (citing Willinger Declaration ¶ 6 at 2).

19.     Officer Gray engaged Plaintiff in conversation regarding Plaintiff's travel plans while Officer Willinger initiated and completed his deployment of K-9 Karly to conduct a dog sniff of Plaintiff's vehicle.[24]

20.     Officer Willinger initiated the dog sniff at the driver's door panel.[25]

21.     K-9 Karly alerted to the odor of narcotics in Plaintiff's vehicle, as set forth in an Incident Report and Deployment Report prepared by Officer Willinger.[26]

22.     As set forth in the Incident Report, "Karly displayed alert behaviors to the odor of narcotics at the front driver door as well as the front driver seat."[27]

23.     As set forth in the Deployment Report:

Karley was deployed on lead during this deployment, with the deployment beginning at the drivers front quarter panel area. As Karly was given her search command she immediately began working down the driver side of the vehicle with her sniffing being focused on the front door seam area. Karly's sniffing was slow and methodical as she worked the front seam and then up towards the open driver window. Karly then jumped into the open driver door window with no direction or que from me. Once inside the vehicle Karley remained focused and intently sniffed the front driver seat. Karly was then called out of the vehicle and secured in the patrol vehicle. Based on Karly's behaviors it was clear to me that she was altering to the odor of narcotics. I spoke with the male driver while detectives conducted a probable cause search and the male admitted that his "friend" smokes marijuana and that the friend had indeed smoked marijuana inside the vehicle the day before. Based on this information Karly's alter behaviors were substantiated.[28]

24.     Based on Karly's behaviors it was clear to Officer Willinger that she was altering to the odor of narcotics. In this regard, K-9 Karly's training behaviors indicating a positive alter

[24] *Id*. at Statement of Undisputed Material Facts ¶ 19 at 5 (citing Gray Declaration ¶ 7 at 2; Gray Bodycam Video at 0:35-1:45).

[25] *Id*. at Statement of Undisputed Material Facts ¶ 20 at 5 (citing Willinger Declaration ¶ 7 at 3; Tufuga Bodycam Video at 7:55).

[26] *Id*. at Statement of Undisputed Material Facts ¶ 21 at 6 (citing Willinger Declaration ¶ 8 at 3; Incident Report, docket no. 70-7, filed Dec. 3, 2021; K-9 Deployment Report, docket no. 70-8, filed Dec. 3, 2021).

[27] *Id*. at Statement of Undisputed Material Facts ¶ 22 at 6 (citing Incident Report at 3).

[28] *Id*. at Statement of Undisputed Material Facts ¶ 23 at 6 (citing Deployment Report at 3).

to the presence of narcotics odors includes head checks (holding head up and focused sniffing versus aimless sniffing), nasal purges, and deep focused sniffing through the nose. K-9 Karly's training behaviors also indicated that she would not jump into or enter a vehicle opening unless these odors were detected, such that this action, if taken by K-9 Karly, would additionally be consistent with a positive alert for the presence of these odors.[29]

25.     Officer Willinger observed K-9 Karly sniff on the driver's door seam area of Plaintiff's vehicle with her head high and mouth closed. Her sniffing remained focused on this area. Without any prompting from Officer Willinger, K-9 Karley jumped into the open driver door window and began focused sniffing with her mouth closed in and around, and back to, the driver's seat. These behaviors were consistent with Officer Willinger's and K-9 Karley's training for a positive detection of an odor of narcotics.[30]

26.     Officer Willinger confirmed a positive alert from K-9 Karley over his radio. At this point, Officer Tufuga was still engaged in the process of completing a warning citation for Plaintiff's traffic violations.[31]

27.     After K-9 Karly indicated a positive alert, Officer Tufuga exited his vehicle and approached Plaintiff, who was standing with Officer Gray.[32]

---

[29] *Id*. at Statement of Undisputed Material Facts ¶ 24 at 6 (citing Deployment Report at 1; Willinger Declaration ¶ 11 at 3).

[30] *Id*. at Statement of Undisputed Material Facts ¶ 25 at 6-7 (citing Willinger Declaration ¶ 12 at 3; Deployment Report).

[31] *Id*. at Statement of Undisputed Material Facts ¶ 26 at 7 (citing Willinger Declaration ¶ 13 at 4; Tufuga Bodycam Video at 8:40; Tufuga Declaration ¶ 10 at 3).

[32] *Id*. at Statement of Undisputed Material Facts ¶ 27 at 7 (citing Tufuga Declaration ¶ 10 at 3; Tufuga Bodycam Video at 9:50).

28.     Officer Tufuga asked Plaintiff if the vehicle contained any illegal drugs, to which Plaintiff responded, "Not as far as I know." Officer Tufuga informed Plaintiff that the K-9 had detected the odor of drugs, and that the alter established probable cause to search the vehicle.[33]

29.     Based on K-9 Karly alerting to the odor of illegal drugs, the Officers searched Plaintiff's vehicle.[34]

30.     Officer Willinger remained on scene with Plaintiff while the other officers on scene completed a search of the vehicle. During this time, Plaintiff admitted to Officer Willinger to having a "friend" who smoked marijuana regularly and who had smoked marijuana in the vehicle the day before.[35]

31.     Officer Sparks was assigned as the supervisor for the Task Force on September 18, 2019. He was in the vicinity of Plaintiff's traffic stop and arrived at the scene as a supervisor and to render any assistance, if needed.[36]

32.     Officer Sparks arrived at the scene as the officers were close to concluding their search of Plaintiff's vehicle. He does not recall having any interactions with Plaintiff.[37]

33.     The officers concluded the search of Plaintiff's vehicle without finding any drugs.[38]

---

[33] *Id*. at Statement of Undisputed Material Facts ¶ 28 at 7 (citing Tufuga Declaration ¶ 11 at 3; Tufuga Bodycam Video at 10:00-11:03).

[34] *Id*. at Statement of Undisputed Material Facts ¶ 29 at 7 (citing Tufuga Declaration ¶ 12 at 3; Tufuga Bodycam Video at 10:30-21:25; Gray Declaration ¶ 8 at 2; Gray Bodycam Video at 3:35-14:53).

[35] *Id*. at Statement of Undisputed Material Facts ¶ 30 at 7 (citing Willinger Declaration ¶ 13 at 4; Deployment Report at 3).

[36] *Id*. at Statement of Undisputed Material Facts ¶ 31 at 8 (citing Sparks Declaration ¶¶ 3-4 at 1-2).

[37] *Id*. at Statement of Undisputed Material Facts ¶ 32 at 8 (citing Sparks Declaration ¶¶ 5-6 at 2).

[38] *Id*. at Statement of Undisputed Material Facts ¶ 33 at 8 (citing Tufuga Declaration ¶ 13 at 4).

34.     Officer Tufuga returned to his vehicle; completed and gave the warning citation to Plaintiff; and allowed Plaintiff to proceed with his travels on I-15.[39]

35.     The entire stop and search of Plaintiff's vehicle lasted approximately 23 minutes and 49 seconds.[40]

## DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[42] In determining whether there is a genuine dispute of material fact, the district court "view[s] the factual record and draw[s] all reasonable inferences therefrom most favorably to the nonmovant."[43]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[44] Once that burden is satisfied, "the burden shifts to the non-moving party to make a showing sufficient to establish that there is a genuine issue of material fact for trial."[45] When the nonmoving party fails to properly address the moving party's assertion of material fact, like in this case, "the [district] court may . . . grant summary judgment if the motion and supporting

---

[39] *Id*. at Statement of Undisputed Material Facts ¶ 34 at 8 (citing Tufuga Declaration ¶ 13 at 4; Tufuga Bodycam Video at 21:25-23:45).

[40] *Id*. at Statement of Undisputed Material Facts ¶ 35 at 8 (citing Tufuga Bodycam Video at 0:00-23:49).

[41] FED. R. CIV. P. 56(a).

[42] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[43] *Id.*

[44] *Id.* at 670-71.

[45] *Lints v. Graco Fluid Handling Inc.*, 347 F. Supp. 3d 990, 1002 (D. Utah, 2018).

materials – including the facts considered undisputed – show that the movant is entitled to [judgment as a matter of law]."[46]

### Plaintiff's constitutional claims are duplicative of his § 1983 claim

"It is well established that once a claim for relief has been asserted under 42 U.S.C. § 1983, all other direct claims for relief based upon various amendments to the U.S. Constitution are unnecessary."[47] Plaintiff asserts claims against Defendants for violation of his constitutional right against unreasonable searches and seizures, and for violation of his constitutional rights to equal protection and due process.[48] These alleged constitutional violations also form the basis for Plaintiff's § 1983 claim.[49] And the relief Plaintiff seeks on his constitutional claims is the same as that sought (and which is available) on his § 1983 claim.[50]

Plaintiff's constitutional claims are duplicative of his § 1983 claim and unnecessary. Therefore, Defendants are entitled to summary judgment on Plaintiff's constitutional claims as a matter of law. Regardless, even if Plaintiff's constitutional claims were not duplicative of his § 1983 claim, all of Plaintiff's claims are subject to Defendants' qualified immunity defense.

### Defendants are entitled to qualified immunity on Plaintiff's claims

The doctrine of qualified immunity allows law enforcement officers to avoid litigation and liability for constitutional violations unless the violation was of clearly established law.[51] "Qualified immunity balances two important interests—the need to hold public officials

---

[46] FED. R. CIV. P. 56(e)(3).

[47] *White v. Talboys*, 573 F. Supp. 49, 50 (D. Colo. 1983) (citing *Shirley v. Bensalem T.P.*, 501 F. Supp. 1138 (E.D. Pa. 1980); *Edmonds v. Dillin*, 485 F. Supp. 722, 728 (N.D. Ohio 1980); *Leite v. City of Providence*, 463 F. Supp. 585, 587 (D. R.I. 1978)).

[48] Amended Complaint ¶¶ 28-37 at 7-8.

[49] *Id*. ¶¶ 38-42 at 8-9.

[50] *Id*. ¶ 32 at 7, ¶ 37 at 8, ¶ 42 at 9.

[51] *Mocek v. City of Albuquerque*, 813 F.3d 912 (10th Cir. 2015); *Pearson v. Callahan*, 555 U.S. 223 (2009); William Baude, *Is Qualified Immunity Unlawful?*, 106 CAL. L. REV. 45, 46 (2018).

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[52] "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."[53] Thus, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and "protects all but the plainly incompetent or those who knowingly violate the law."[54] This is a deliberately low standard, favoring protection of law enforcement officers.[55]

The qualified immunity doctrine was created by the Supreme Court and has been seriously questioned for a number of reasons, including: its uncertain legal basis; the difficulty it creates for plaintiffs to vindicate any violations of their constitutional rights; and the disproportionate effect it has on minorities.[56] Because attempts to abolish or curtail the doctrine through legislation have failed, it remains the law and courts must continue to apply it as the law.

Qualified immunity provides that "[i]ndividual government actors are immune from suit . . . unless a plaintiff demonstrates '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"[57]

---

[52] *Pearson*, 555 U.S. at 231.

[53] *Id*. (internal quotations omitted).

[54] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotations omitted).

[55] *Jamison v. McClendon,* 476 F. Supp. 3d 386, 391 (S.D. Miss. 2020).

[56] *Id.*; Baude, *Is Qualified Immunity Unlawful?*, 106 CAL. L. REV. at 46; Opinion, *How the Supreme Court Lets Cops Get Away With Murder*, N.Y. TIMES, May 29, 2020, https://www.nytimes.com/2020/05/29/opinion/Minneapolis-police-George-Floyd.html; James A. Wynn Jr., Opinion, *As a judge, I have to follow the Supreme Court. It should fix this mistake*, WASH. POST, June 12, 2020, https://www.washingtonpost.com/opinions/2020/06/12/judge-i-have-follow-supreme-court-it-should-fix-this-mistake/; Radley Balko, Opinion, *The ugly origins of qualified immunity,* WASH. POST, Oct. 26, 2021, https://www.washingtonpost.com/opinions/2021/10/26/ugly-origins-qualified-immunity/.

[57] *Mocek*, 813 F.3d at 922 (citing *al–Kidd,* 563 U.S. at 735).

When defendants raise the qualified immunity defense, the burden shifts to the plaintiff, who must satisfy this "heavy two-part burden."[58]

There is no mandatory sequence to the two-prong test.[59] Judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[60] "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense."[61]

Plaintiff generally alleges that Defendants violated his constitutional right against unreasonable searches and seizures, and his rights to equal protection and due process in the traffic stop and search of his vehicle.[62] Because Plaintiff fails to present evidence supporting his claims, and because the Undisputed Material Facts demonstrate that Defendants did not violate Plaintiff's constitutional rights, Plaintiff fails to establish the first prong of the qualified immunity standard. Defendants are entitled to summary judgment on Plaintiff's claims as a matter of law. And it is unnecessary to address the second prong of the standard.

**Defendants did not violate Plaintiff's constitutional right against unreasonable searches and seizures**

"[A] traffic stop is valid under the Fourth Amendment if it is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."[63] "[T]he reasonableness of the traffic stop is an objective

---

[58] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotations and citations omitted).

[59] *Pearson*, 555 U.S. at 236.

[60] *Id*.; *see also al-Kidd*, 563 U.S. at 735.

[61] *A.M. v. Holmes*, 830 F.3d 1123, 1134-1135 (10th Cir. 2016) (internal citations omitted).

[62] Amended Complaint ¶ 30 at 7, ¶ 35 at 8, ¶ 40 at 8-9.

[63] *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1201 (10th Cir. 2009) (internal quotations omitted).

inquiry."[64] The subjective motivations of law enforcement are not considered—those motivations are irrelevant.[65] "Instead, the sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction."[66]

It is undisputed that Officer Tufuga observed Plaintiff's vehicle traveling in a manner that gave him an objectively reasonable basis to believe that Plaintiff had committed at least two improper lane travel traffic violations under Utah law. Specifically, Officer Tufuga observed Plaintiff (1) fail to signal when switching from the left to right lane, and (2) fail to stay in a single lane when passing a semi-truck.[67] Officer Tufuga promptly notified Plaintiff of these observations as being the basis for the stop.[68] Officer Tufuga's observations that Plaintiff committed or was committing a traffic infraction, and his reasonable suspicion that Plaintiff had or was committing a traffic infraction, renders the traffic stop lawful at its inception.

Plaintiff's brief detention follow the stop was also lawful. "Generally, an investigative detention must last no longer than is necessary to effectuate the purpose of the stop."[69] "This means that the officer, absent the driver's consent, ordinarily may not do more than ask to see a driver's license and registration and insurance documents, run a computer check on the car and driver, inquire about the driver's travel plans, and write out a citation."[70] Law enforcement is also permitted to conduct a K-9 sniff of a vehicle if the sniff does not prolong the traffic stop. A

---

[64] *Id.*

[65] *Id.*

[66] *Id.* (internal quotations omitted).

[67] *Supra*, Undisputed Material Facts ¶¶ 7-8 at 3; Utah Code Ann. §§ 41-6a-710(1)(a)(i)-(ii), -804(1)(a)(ii).

[68] Supra, Undisputed Material Facts ¶ 10 at 3.

[69] *United States v. Cervine,* 347 F.3d 865, 870-871 (10th Cir. 2003) (internal quotations omitted).

[70] *United States v. Vazquez,* 555 F.3d 923, 928-929 (10th Cir. 2009) (citing *Cervine*, 347 F.3d at 871).

K-9 sniff of a stopped vehicle is constitutionally permissible, even without a reasonable articulable suspicion that the vehicle contains contraband, so long as the sniff does not prolong the stop beyond the time reasonably required to complete the stop's mission.[71]

It is undisputed that Officer Tufuga appropriately and promptly requested Plaintiff's driver's license, registration, and insurance and inquired about Plaintiff's travel plans.[72] Plaintiff spent a few minutes unsuccessfully searching for his registration, at which point Officer Tufuga returned to his vehicle, and initiated tasks necessary to confirm registration of Plaintiff's vehicle, ran a warrants check for any outstanding warrants, and began writing out a warning citation for the traffic violations.[73] Officers Gray and Willinger arrived with a K-9 within a couple minutes of Officer Tufuga returning to his patrol car.[74] Officer Gray asked Plaintiff to step out of his vehicle,[75] and Officer Willinger initiated the dog sniff of Plaintiff's vehicle.[76] And K-9 Karly indicated a positive alert while Officer Tufuga was still in his patrol car preparing the warning citation.[77] At this point, the stop's duration was less than nine minutes.[78]

The Undisputed Material Facts demonstrate that Officer Tufuga diligently performed the tasks necessary to effectuate the stop, and did not unreasonably delay stop prior to K-9 Karly's positive alert.[79] Nothing in the Undisputed Material Facts suggests (and Plaintiff has pointed to

---

[71] *Rodriguez v. United States*, 575 U.S. 348, 357 (2015); *Illinois v. Caballes*, 543 U.S. 405 (2005); *Bumpers v. Cleveland*, 653 F. Supp. 2d 1202, 1211 (D. Utah 2009).

[72] *Supra*, Undisputed Material Facts ¶¶ 11-13 at 3-4.

[73] *Id*. Undisputed Material Facts ¶ 14 at 4.

[74] *Id*.

[75] "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n.6 (1977).

[76] *Supra*, Undisputed Material Facts ¶¶ 15-16 at 4, ¶¶ 19-20 at 5.

[77] *Id*. Undisputed Material Facts ¶ 21-26 at 6-7.

[78] *Id*.

[79] *Id*. Undisputed Material Facts ¶¶ 7-14 at 3-4, ¶ 26 at 7.

no evidence suggesting) that any nontrivial period of Plaintiff's detention from the initial stop to the dog alert where the officers were not conducting proper follow-up.[80] Indeed, the K-9 alert occurred less than five minutes after Officer Tufuga first returned to his vehicle to begin work and follow-up on the initial traffic stop.[81] Therefore, the dog sniff did not prolong the initial traffic stop beyond the time reasonably necessary to complete the stop's mission.

The subsequent search of Plaintiff's vehicle was also lawful and did not unconstitutionally prolong Plaintiff's detention. At the point of K-9 Karly's positive alert, probable cause existed to prolong the traffic stop and search Plaintiff's vehicle.[82] Defendants diligently searched the vehicle for just under 11 minutes.[83] Not locating any illegal drugs, Officer Tufuga returned to his vehicle; completed Plaintiff's warning citation; returned Plaintiff's driver's license; and allowed Plaintiff to proceed with his travels.[84] And the entire stop from initiation to conclusion lasted less than 24 minutes.[85]

Based on the Undisputed Material Facts, Plaintiff's failure to present evidence supporting his claims, and the applicable legal standards, Defendants did not violate Plaintiff's constitutional right against unreasonable searches and seizures as a matter of law.

---

[80] *Vazquez*, 555 F.3d at 929.

[81] *Supra*, Undisputed Material Facts ¶ 14 at 4, ¶ 26 at 7.

[82] *United States v. Ludwig*, 641 F.3d 1243, 1250-1251 (10th Cir. 2011); *United States v. Parada*, 577 F.3d 1275, 1281-1282 (10th Cir. 2009).

[83] *Supra*, Undisputed Material Facts ¶¶ 29 at 8.

[84] *Id*. Undisputed Material Facts ¶ 33-34 at 8.

[85] *Id*. Undisputed Material Facts ¶ 35 at 9.

**Defendants did not violate Plaintiff's constitutional right to equal protection**

Plaintiff's allegations regarding a violation of his equal protection right consist of nothing more than Plaintiff's unsupported speculation. This was summarized in a prior ruling that dismissed Plaintiff's claims against other defendants:

> Plaintiff characterizes the alleged "program" as a "'catch and release' roving roadblock." But the Complaint does not allege facts to support this characterization.
>
>                         ***
>
> Plaintiff speculates that he was targeted for selective enforcement because he was an out-of-state traveler. Plaintiff also speculates that the "drug enforcement area ahead" road sign entraps travelers to engage in criminal conduct by encouraging them to leave the road in an effort to avoid the "roving road stop." Plaintiff further speculates that Defendants' conduct subjected travelers to "racial discrimination." And Plaintiff speculates that any traffic stop under the alleged program would subject the driver to increased scrutiny and detainment. However, the Complaint contains no factual allegations to support this speculation.[86]

No facts have since been developed to support Plaintiff's speculative allegations against Defendants. And Plaintiff's self-serving and conclusory averments in his pleadings are not sufficient to create disputed issue of material fact or to avoid summary judgment.

To prove his equal protection claim, Plaintiff must show that Defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose as to him as a "class of one" or as to other persons similarly situated as Plaintiff. Plaintiff has not presented any evidence to support his claim.

"To prevail on [a] class-of-one theory, a plaintiff must allege and prove (1) 'that [the plaintiff] has been intentionally treated differently from others similarly situated' and (2) 'that there is no rational basis for the difference in treatment.'"[87] As Plaintiff sees it, he was "singled

---

[86] Memorandum Decision and Order Granting in part and Denying in part Motion to Dismiss at 13-14, docket no. 56, filed Sept. 13, 2021.

[87] *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1253 (10th Cir. 2016) (*Village of Willowbrook v. Olech*, 528 U.S. 662, 564 (2000)).

out for selective statutory traffic enforcement" due to his out-of-state license plate.[88] There is no

evidence to support Plaintiff's allegation. And the Undisputed Material Facts demonstrate that

Plaintiff was lawfully stopped pursuant to an observed traffic violation.[89] Therefore, Plaintiff has

not established and cannot establish a class-of-one equal protection violation as a matter of law.

For similar reasons, Plaintiff's "full class" theory also fails. Plaintiff defines the "full

class" as all travelers, both inter and intra state, traveling on I-15 during the time that Defendants

were engaged in the alleged "roving roadside roadblock procedure," which "class" Plaintiff

speculates were "generally the subject of racial discrimination[.]"[90] Plaintiff has presented no

evidence of a "roving roadside roadblock procedure," or a "catch and release program" for

similarly situated vehicles. Plaintiff also presents not evidence to support his allegations of

"racial discrimination." And Plaintiff's speculative and conclusory allegations are contrary to the

Undisputed Material Facts, which demonstrate that Plaintiff was lawfully stopped pursuant to an

observed traffic violation.[91] Therefore, Plaintiff has not established and cannot establish his "full

class" equal protection violation as a matter of law.

To establish a selective enforcement claim based on considerations such as race, Plaintiff

must show that Defendants' actions had a discriminatory effect and were motivated by a

discriminatory purpose.[92] And to show a discriminatory purpose, Plaintiff must show that

discriminatory intent was a motivating factor in the decision to enforce the criminal law against

---

[88] Amended Complaint ¶ 25 at 5-6, ¶ 35 at 8.

[89] *Supra*, Discussion at 12-15.

[90] Amended Complaint ¶ 24 at 5, ¶ 27 at 6, ¶ 35 at 8.

[91] *Supra*, Discussion at 12-15.

[92] *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003); *Harris v. City & Cty. of Denver*, No. 11-cv-01201-MSK-KLM, 2012 WL 263046, *4 (D. Colo. Jan. 30, 2012).

him.[93] Plaintiff has failed to present any evidence suggesting selective enforcement. To the extent Plaintiff was treated differently from other motorists, the Undisputed Material Facts demonstrate that it was because he was violating a traffic law.[94] This does not support a "selective enforcement" claim under the equal protection clause.[95]

A traffic stop may be initiated when an officer observes a traffic violation regardless of whether the officer had other subjective motives for stopping the vehicle.[96] And a K-9 sniff of a stopped vehicle is constitutionally permissible, even without a reasonable articulable suspicion that the vehicle contains contraband, so long as the sniff does not prolong the stop beyond the time reasonably required to complete the stop's mission.[97] The Undisputed Material Facts demonstrate that this is what happened in traffic stop and search of Plaintiff's vehicle.

Based on the Undisputed Material Facts, Plaintiff's failure to present evidence supporting his claims, and the applicable legal standards, Defendants did not violate Plaintiff's constitutional right to equal protection as a matter of law.[98]

**Defendants did not violate Plaintiff's constitutional right to due process**

"[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the[] claims."[99] Plaintiff's allegations and claims regarding due process violations rely entirely on his allegations

---

[93] *Harris*, 2012 WL 263046, *4 (citing *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006).

[94] *Supra*, Discussion at 12-15.

[95] *Schor v. City of Chicago*, 576 F.3d 775, 778-779 (7th Cir. 2009).

[96] *Swanson*, 577 F.3d at 1201.

[97] *Rodriguez*, 575 U.S. at 357; *Caballes*, 543 U.S. 405; *Bumpers*, 653 F. Supp. 2d at 1211.

[98] *Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1257-58 (10th Cir. 2009).

[99] *Bumpers*, 653 F. Supp. 2d at 1214 (quoting *Cty of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)).

of violations of his right against unreasonable searches and seizures and his right to equal protection.[100] Therefore, Plaintiff's due process allegations and claims are appropriately analyzed under the standards for violations of the right against unreasonable searches and seizures and the right to equal protection. And because the Undisputed Material Facts demonstrate that Defendant did not violate these rights in the traffic stop and search of Plaintiff's vehicle,[101] Plaintiff has not established and cannot establish a violation of his right to due process as a matter of law.[102]

**Defendants did not violate other rights and statutes referenced in the Amended Complaint**

Plaintiff's Amended Complaint references other rights and "related statutes" to § 1983, including a "finding of racial impact" under "section 1981;" a "finding that defendants acted as 'co-conspirators'" under "section 1985;" and protections allowed by the "implied right to freely travel from state to state."[103] Plaintiff fails to present evidence and create a disputed issue of material fact to support a claim for violation of these other rights and "related statutes."

Plaintiff's "class" allegations regarding "racial impact" and discrimination fail as a matter of law because they are not well-pleaded, are wholly unsupported, and are contrary to the Undisputed Material Facts.[104] Plaintiff's speculation within the Amended Complaint does not satisfy his burden on summary judgment.

Plaintiff also fails to plead and present evidence to support a conspiracy claim. "To properly allege a conspiracy under § 1983, a plaintiff must allege specific facts that plausibly show (1) an agreement and concerted action between the defendants and (2) an actual

---

[100] Amended Complaint ¶ 29 at 7, ¶ 34 at 7, ¶ 35 at 8, ¶¶ 39-40 at 8-9.

[101] *Supra*, Discussion at 12-18.

[102] *Bumpers*, 653 F. Supp. 2d at 1214; *Travis*, 565 F.3d at 1258.

[103] Amended Complaint ¶ 34 at 7, ¶ 42 at 9.

[104] *Supra*, Discussion at 16-18.

deprivation of constitutional rights."[105] "Conclusory allegations of conspiracy [do] not suffice."[106] The plaintiff must establish that there was "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences."[107] And "because its object is to punish the 'deprivation of the equal enjoyment of rights secured by the law to all' . . . section 1985 does require 'that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action[.]'"[108]

Plaintiff fails to allege specific facts and presents no evidence to support a conspiracy claim. Plaintiff only offers conclusory allegations that Defendants acted "individually, jointly, or as co-conspirators" to violate Utah law and his constitutional rights.[109] Plaintiff also fails to properly allege and support with evidence any racial or class-based animus.[110] And the Undisputed Material Facts demonstrate that Plaintiff suffered no actual deprivation of his constitutional rights.[111]

Finally, Plaintiff's "implied right to travel" is not implicated by the stop of his vehicle because of the traffic violations Officer Tufuga observed.[112] "A police officer's enforcement of a valid traffic law does not violate the motorist's right to travel."[113] "The constitutional right to

---

[105] *Turnbough v. Wantland*, 676 Fed. App'x 811, 814 (10th Cir. 2017) (citing *Shimomura v. Carlson*, 811 F.3d 349, 359 (10th Cir. 2015)).

[106] *Id*.

[107] *Snell v. Tunnell,* 920 F.2d 673, 702 (10th Cir. 1990) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979)).

[108] *Allen v. Briggs*, 331 Fed. App'x 603, 605 (10th Cir. 2009) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

[109] Amended Complaint ¶ 25 at 5-6.

[110] *Supra*, Discussion at 16-18.

[111] *Id*. Discussion at 12-19.

[112] *Id*. Discussion at 12-15.

[113] *United States v. Hare*, 308 F. Supp. 2d 955, 1001 (D. Neb. 2004).

travel . . . is not a right to travel in any manner one wants, free of state regulation, and it does not give [drivers] the right to ignore [a state's] traffic laws at their discretion."[114]

Based on the Undisputed Material Facts, Plaintiff's failure to present evidence supporting his claims, and the applicable legal standards, Defendants did not violate the other rights and "related statutes" to § 1983 as a matter of law.

**Defendants are entitled to qualified immunity on Plaintiff's claims**

Plaintiff failed to present evidence supporting his claims that Defendants violated his constitutional rights in the traffic stop and search of his vehicle. And the Undisputed Material Facts demonstrate that Defendants did not violate Plaintiff's constitutional rights in the traffic stop and search of his vehicle. Therefore, Plaintiff has not established and cannot establish the first prong of the qualified immunity standard.[115] Defendants are entitled to qualified immunity on Plaintiff's claims as a matter of law.

## ORDER

IT IS HEREBY ORDERED that Defendants' Motion[116] is GRANTED. Plaintiff's Amended Complaint[117] is DISMISSED with prejudice.

The Clerk is directed to close the case.

Signed March 10, 2022.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[114] *Id*. (internal citations omitted).

[115] *Mocek,* 813 F.3d at 922; *Holmes,* 830 F.3d at 1134-35.

[116] Docket no. 69, filed Dec. 3, 2021.

[117] Docket no. 61, filed Sept. 29, 2021.